COLUMBIA BUILDING & LOAN ASS'N v. GRANGE et al.

(Circuit Court, D. Montana. November 9, 1896.)

No. 378.

Injunction against State Officers—Equity Jurisdiction—Building and Loan Associations.

Complainant, a building and loan association, alleged, in its bill, that a statute of the state of Montana relative to the business of such associations imposed such oppressive and unjust restrictions that it could not comply with them; that it had ceased to transact new business in the state, and was

only holding its securities, already taken from residents of the state, and collecting payments as they fell due; that the officials of the state had notified it in writing that it was required to comply with the terms of the act, and, if it failed to do so, proceedings would be taken against it to enforce certain fines and penalties, and a receiver of its property would be applied for; and thereupon complainant sought to enjoin the state officials from such action. *Held*, that the bill showed no right to the equitable relief sought, since it was not positively alleged that the complainant had failed to do the acts, failure to do which would subject it to penalties under the act, nor that there would be a multiplicity of suits to enforce such penalties, and since the invalidity of the act, if it contravened the constitution of the United States, would be a defense to actions to enforce such penalties, and any ground of equitable relief would be equally available as a defense in proceedings to appoint a receiver.

Shropshire & Burleigh (Jabez Norman and J. Warren Miller, of counsel), for complainant.

H. J. Haskell, Atty. Gen., for defendants.

KNOWLES, District Judge. The plaintiff in this action is a corporation organized and existing under and by virtue of the laws of the state of Colorado. The defendants Grange and Clements are the members of the board of commissioners of building and loan associations for the state of Montana, and the said Haskell is the attorney general of the said state of Montana, and the legal adviser and counsel for the said board of commissioners. The said defendants are all residents of the said state of Montana. The complaint alleges that the amount in controversy exceeds the sum of $2,000. The object of this suit is to obtain an injunction against defendants, commanding and enjoining them, and each of them, their attorneys and agents, from carrying out their threats, mentioned in the complaint, and applying for or having a receiver appointed for plaintiff in the state of Montana by any court therein, on the ground that plaintiff fails or refuses to comply with the terms and provisions of the act in the bill mentioned, and entitled "An act to provide for the organization, government and control of building, loan and saving associations, both domestic and foreign, doing a general business throughout the state of Montana," and from in any manner interfering with all and singular the contracts of the plaintiff herein specified, and from prosecuting plaintiff in any court of Montana for the collection of any fines or penalties in the premises.

The bill of complaint sets forth that plaintiff is a national building and loan association, and has heretofore been engaged in the usual business pertaining to such a building and loan association, in Montana and other states, and at the present time has, in the state of Montana, 64 shareholders, who own 230 shares of the said association, and that plaintiff has loaned the sum of $37,851 upon real estate and pledges of stock, and upon pledges of stock alone $575. The bill further sets forth that plaintiff, since the passage of said act, has not attempted to transact its usual or ordinary business within the state of Montana; that the terms of said act are so oppressive, unjust, and exacting that plaintiff could not comply with the terms thereof, and has retired from the state of Montana, and is

not now, and has not been since the passage of said act, carrying on or transacting any new business in said state; that it is merely holding its notes and securities already taken and obtained for money invested in the said state, and receives simply from its borrowers payments from time to time made on said securities as the same become due.

The defendants wrote to plaintiff the following letter:

"Your attorney, Mr. Shropshire, informs me that it is the express intention of your company to decline to qualify and comply with the laws of this state as passed by the Fourth legislative assembly to wit, 'An act to provide for the organization, government and control of building, loan and saving associations, both domestic and foreign, doing a general business throughout the state of Montana.' I am advised that the construction you place upon this law is that, as you suspend the sale of stock and the further making of loans in this state, it is not obligatory upon you to comply with the said law. You perhaps are not aware of the fact that the legislature amended the printed bill which was sent you, as I understand, by Mr. Shropshire, and that section 43, a copy of which is herewith inclosed, is intended to compel all associations who have qualified or have been doing business in this state to come under the provisions of the act, and a failure to do so will, in the opinion of the attorney general of this state, render such association liable to all the penalties provided by the law. Acting under the advice of the attorney general, it is the purpose of the board of commissioners to ask the courts having proper jurisdiction to appoint a receiver and take charge of the assets of any foreign association who fails to comply with this act and who is doing business in this state. And, further, we will require the bonds of the officers who handle any money (see section 23 of said act) to be filed satisfactory to the commissioners, and any association whose officers fail to maintain the bonds or fidelity insurance as required by this act will be liable to a fine of $100 for each day such association transacts business after such bond becomes due. The attorney general holds that an association cannot simply refrain from doing one class of business, and still do another, within the confines of this state, and be exempt; that is to say, the law is intended to cover the accumulation of money by co-operation within the state of Montana, and collections of installments and stock from your members within this state would be one of the branches of business that this bill intended to cover. You are therefore notified to file your report of business, as set out in section 44 of the act; to file bonds of your officers handling money, drawing checks, etc., for a sum equal to the amount of your monthly receipts; and, further, that you are required to deposit, as provided in section 43 of said act, all of your mortgages taken in this state with the state treasurer of this state; and, further, that you are required to furnish the board of commissioners with a certificate showing that you have $100,000 deposited with some state officer or duly-incorporated trust company or bank, in trust, for credit of all the members of your association, as required by section 37 of this act. Should you fail to comply with the demand set forth by the 15th of April, 1895, the commissioners will report your failure to the attorney general for such action in the matter as he may deem proper, and to enable him to notify the proper county officers to proceed against your company for the collection of such fines and penalties as the law may provide."

Plaintiff sets forth in the bill that certain sections of the act, above referred to, require of it certain duties, and provide certain penalties for a failure to perform the same. The substance of these sections are set forth in the bill, and they are stated to be sections 23, 25, 26, 28, 30, 34, 37, 41, 43, and 44. In section 31 of said act it is provided, as alleged in the bill, that if, in the opinion of said commissioners appointed in pursuance with the provisions of said act, any such corporation as plaintiff has been violating any of the provisions of said act, the attorney general is authorized to apply to the district court of the county in which the association may be doing

business for an injunction restraining the said association from proceeding with its business, and that, in the discretion of the judge of said district court, receivers may be appointed to take possession of the property and effects of said association. It is claimed, in the bill, that the appointment of a receiver, with the powers and authority specified above, will impair the obligation of plaintiff's contracts with its stockholders, and also that, if the defendants are allowed to enforce the provisions of the above act, and subject it to the penalties and restrictions thereof, they will deprive plaintiff of the equal protection of the laws. It is also urged in the bill, if said receiver is appointed to take charge of plaintiff's property in Montana, its property will be taken without due process of law.

To this bill defendants filed their demurrer, the ground of which is as follows, namely: That it appears, by the plaintiff's own showing by said bill, that the complainant has not made or stated such a cause as does or should entitle it to any such discovery or relief as is hereby sought or prayed for from or against these defendants.

The question is thus presented as to whether the bill presents sufficient facts to justify the court in granting the injunction prayed for. "To authorize the remedy by injunction, the violation of a legal right of property is not enough. There must also be some special and recognized ground of equity jurisdiction, set forth by proper allegations and showing; for instance, a reasonable apprehension of irreparable injury to complainant, or that he has no adequate remedy at law, or that an injunction is necessary to avoid a multiplicity of suits." Beach, Mod. Eq. Prac. § 758. It will be observed that the plaintiff seeks to enjoin the bringing of certain actions at law against it for the recovery of certain penalties and forfeitures. It might be inferred that there would be a multiplicity of suits instituted to recover these. There is no reason, however, why they might not be all embraced in one suit. It does not fully appear, however, that the right under the statute to bring any such suits have actually accrued. It is alleged that defendants have demanded of plaintiff that it perform the acts mentioned in said sections. It is not alleged, however, that plaintiff has failed or refused to perform them, and that it has thereby incurred a liability to pay the penalties and forfeitures named in said acts. The allegation that plaintiff has ceased to do business in Montana, save collecting what is due it on subscriptions of stock and on securities given to secure money loaned, would lead to the inference that it had refused to perform the acts demanded by defendants, and had thus incurred liability for the forfeitures and penalties named in said sections of the statute. But there are no direct allegations to this effect. The facts upon which an injunction is claimed should be made to appear plainly, and not arrived at from inference or conjecture. High, Inj. § 35.

The suits for forfeitures and penalties would be actions at law. The fact that the sections which declare such forfeitures and penalties are unconstitutional can be urged at law, as well as in equity. If it appears that there is an adequate remedy at law, this court, sit-

ting in chancery, has no jurisdiction of the cause. If there should be a large number of suits brought to recover said penalties and forfeitures, the most this court ought to do would be to restrain the prosecution of those of a similar character until one should be tried and the constitutional defense settled.

The action to appoint a receiver would be one in equity. In considering the question of enjoining a suit in equity, in High, Inj. § 46, it is said:

"Nor does the fact that the proceedings sought to be enjoined are in a court of equity alter or vary the rule, since, if the person aggrieved has a good defense to the equitable action, it is equally as competent for him to urge such matter in his answer to that action as in a bill to enjoin."

This view is sustained in Wolfe v. Burke, 56 N. Y. 115.

The fact that the appointment of a receiver would work a great hardship and injury to the plaintiff would not be sufficient. There is no presumption that this court can indulge that, if an application is made for a receiver to any proper court, such court would unjustly appoint such receiver, or would wrongly decide the constitutional questions presented upon such application. It is therefore ordered that said demurrer be, and the same is, sustained.